COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-166-CR

 

 

DARRELL GLENN BELL                                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I. Introduction








Appellant Darrell Glenn Bell
appeals his conviction for capital murder. 
In twelve points, appellant argues that the evidence is legally and
factually insufficient, that the indictment failed to contain notice of the
State=s intent to establish his criminal responsibility as a party or
conspirator under Chapter 7 of the Texas Penal Code, that the trial court erred
by denying his request for a lesser included offense instruction on conspiracy
to commit capital murder and conspiracy to commit aggravated robbery, that the
trial court erred by denying his request for a benefit of the doubt instruction
in the jury charge, that the trial court erred by denying his request for an
accomplice witness instruction, that the trial court erred by denying his
request for an independent impulse rule 
instruction regarding the conduct of Tarrence L. Stevenson, that the
prosecutor commented on appellant=s silence, and that Shawntee Abbs=s written statement should have been excluded from evidence.  We affirm.

II. Background Facts

On April 13, 2005, Patrick
and Brenda Kilpatrick went to Terry=s Food Mart at 5500 Hemphill in Fort Worth.  Patrick went to the counter to speak with the
store clerk, Syed Karim, while Brenda grabbed some beer and Pepsi. While
Patrick spoke to Syed, a black male walked in and went to the back of the
store.  A few minutes later, two more black
men dressed in black pants and sweatshirts with hoodies came in and said, AThis is a robbery, fools.@  One of the men wore a mask and
had a gun.  Syed took out the cash
register, set it on the counter, and begged for his life. 








Patrick and Brenda, who had
backtracked down one of the aisles away from the counter and crouched on the
floor, called 9-1-1 when they heard a shot fired.  The men left in a black four-door car.  Patrick ran to the front, noticed that the
men were gone, and saw Syed holding his stomach before he fell to the
floor.  Patrick ran to the Shell station
next door where he knew an ambulance was parked, but the EMTs refused to help
until the police cleared the scene.  Syed
later died from his wounds at the hospital.

Based on the information the
Kilpatricks provided, the police believed that only two men were involved in
the robbery.  However, after viewing the
store surveillance video, police realized a third man had been involved.  On April 15, 2005, police received a crime
stoppers tip from Maricia Holland. 
Holland had overheard a conversation between her girlfriend Shawntee
Abbs and appellant in which appellant told Abbs that he had committed a robbery
and had some money.  A couple of days
later, Holland, Abbs, and appellant were at Abbs=s house, and appellant again admitted that he was involved with the
robbery and showed them a Awad@ of
cash.  Appellant also talked about the
robbery on another occasion at Abbs=s house and said that he Agot them [his friends] pumped up@ and one of them Agot trigger happy.@








Amanda Bivens testified that
she had met appellant two years ago when he was selling drugs.  Bivens had a black, four-door 1998 Oldsmobile
Cutlass, which she would rent to appellant in exchange for drugs.  On April 13, 2005, Bivens was with appellant
in her car when he began talking about needing money to purchase drugs to sell;
appellant said he was going to rob a clerk at a convenience store.  Appellant, who was driving, stopped at a
house and picked up his friends T.T. and Julian.  Bivens waited in the car for about fifteen
minutes until appellant, T.T., and Julian came out wearing black sweatshirts.
Appellant threw a gun in her lap and told her to hold it, but Bivens handed the
gun to T.T. and Julian in the back seat. 
Appellant drove around and tried to find another gun, but he could not
locate one.  Appellant then dropped
Bivens off at a house on Savage Street where she waited for about thirty
minutes until appellant, T.T., and Julian returned.  Appellant told Bivens to A[g]et that cash register out your car@ and gave her ten dollars for the use of her car.  Bivens also saw a black sweatshirt and black
ski mask in the back seat of her car. Appellant, T.T., and Julian left in
another car.  

Bivens saw the robbery on the
news the next morning and, although she knew appellant and his friends were
going to commit a crime the night before, she did not know that they had shot
someone until she saw the story.  When
Bivens later saw appellant, she asked him what had happened, but he was
evasive.  Appellant changed his story a
couple of times; for example, one time he told her that he had gone into the
store but also that he had waited in the car. 








Several days later, Bivens
and Abbs were driving in Bivens=s car when the police surrounded them. 
Bivens and Abbs accompanied the police to the station and told them what
they knew.  After speaking with police,
Bivens went with a detective to a pay phone at a Chevron station and called
appellant to meet her.  When appellant
arrived, police arrested him. 

A grand jury charged
appellant as follows:

Darrell Glenn Bell, hereinafter called Defendant,
in the County of Tarrant and State aforesaid, on or about the 13th day of April
2005, did

 

Then and
there intentionally cause the death of an individual, Syed Karim, by shooting
him with a firearm, and the said defendant was then and there in the course of
committing or attempting to commit the offense of robbery. 

A jury convicted appellant of the offense of
capital murder, and the trial court assessed punishment at life
imprisonment.  Appellant timely filed
this appeal.

III. Legal and Factual
Sufficiency

In points one and two,
appellant argues that the evidence was legally and factually insufficient to
support the jury=s
verdict.  Specifically, appellant claims
that he lacked specific intent to kill Syed. 

A.     Standard
of Review








In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the prosecution in order to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414B15, 417; Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s resolution of a conflict in the evidence.  Id. 
We may not simply substitute our judgment for the fact-finder=s.  Johnson, 23 S.W.3d at
12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at
8.  Thus, we must give due deference to
the fact-finder=s
determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.

An opinion addressing factual
sufficiency must include a discussion of the most important and relevant
evidence that supports the appellant=s complaint on appeal.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  Moreover, an opinion reversing and remanding
on factual insufficiency grounds must detail all the evidence and clearly state
why the finding in question is factually insufficient and under which
ground.  Goodman v. State, 66
S.W.3d 283, 287 (Tex. Crim. App. 2001); Johnson, 23 S.W.3d at 7.

 

 








B.     Capital
Murder and Law of the Parties

A person commits capital
murder if he intentionally or knowingly causes the death of an individual while
in the course of committing or attempting to commit robbery.  Tex.
Penal Code Ann. ''
19.02(b)(1), 19.03(a)(2) (Vernon 2003 and Vernon Supp. 2008); Johnson v.
State, 853 S.W.2d 527, 535 (Tex. Crim. App. 1992), cert denied, 510
U.S. 852 (1993); Frank v. State, 183 S.W.3d 63, 72 (Tex. App.CFort Worth 2005, pet. ref=d).  The law of parties applies
to the offense of capital murder.  Johnson,
853 S.W.2d at 534; Frank, 183 S.W.3d at 72.








Under the law of parties, A[a] person is criminally responsible as a party to an offense if the
offense is committed by his own conduct, by the conduct of another for which he
is criminally responsible, or by both.@  Tex. Penal Code Ann. ' 7.01(a) (Vernon 2003); Frank, 183 S.W.3d at 72.  A person is Acriminally responsible@ for an offense committed by the conduct of another, if acting with
intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person to commit the
offense.  Tex. Penal Code Ann. ' 7.02(a)(2); Frank, 183 S.W.3d at 72.  Evidence is sufficient to convict under the
law of parties when the defendant is physically present at the commission of
the offense and encourages its commission by words or other agreement.  Ransom v. State, 920 S.W.2d 288, 302
(Tex. Crim. App.) (op. on reh=g), cert. denied, 519 U.S. 1030 (1996); Frank, 183 S.W.3d
at 72B73.  In determining whether a
defendant participated in an offense as a party, the fact finder may examine
the events occurring before, during, and after the commission of the offense
and may rely on actions of the defendant that show an understanding and common
design to commit the offense.  Ransom,
920 S.W.2d at 302; Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim.
App. 1985), cert. denied, 476 U.S. 1101 (1986); Frank, 183 S.W.3d
at 73.

Further, section 7.02(b) of
the penal code provides that

[i]f, in the attempt to carry out a conspiracy to
commit one felony, another felony is committed by one of the conspirators, all
conspirators are guilty of the felony actually committed, though having no
intent to commit it, if the offense was committed in furtherance of the
unlawful purpose and was one that should have been anticipated as a result of
the carrying out the conspiracy.

 

Tex. Penal Code Ann. ' 7.02(b); Frank,
183 S.W.3d at 73.

The law of parties need not
be pled in the indictment.  Marable v.
State, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002); Montoya v. State, 810 S.W.2d 160,
165 (Tex. Crim. App. 1989), cert. denied, 502 U.S. 961 (1991); Frank, 183 S.W.3d at 72.  This rule applies to the law of parties found
in both section 7.02(a)(2) and section 7.02(b). 
Montoya, 810 S.W.2d at 165.

 








C.     Analysis

Appellant argues that because
he did not intend to kill anyone, the evidence is insufficient to find him
guilty of capital murder.  However,
because the jury charge authorized the jury to find appellant guilty of capital
murder under either penal code section 7.02(a)(2) or 7.02(b), we need only
consider whether the evidence is sufficient to prove that Syed=s murder should have been anticipated as a result of carrying out the
robbery.  See Love v. State, 199
S.W.3d 447, 453 (Tex. App.CHouston [1st Dist.] 2006, pet. ref=d). 








Evidence that a defendant
knew his co-conspirators might use guns during a robbery can be sufficient to
demonstrate that the defendant should have anticipated the possibility of
murder occurring during the course of the robbery.  See id.; see also Fuller v. State, 827
S.W.2d 919, 932 (Tex. Crim. App. 1992), cert. denied, 509 U.S. 922
(1993) (holding that murder should have been anticipated as a possible result
of a robbery when, although appellant denied participating in any brutality
against decedent, he admitted having a pocketknife with him at the time of
entry and that one of his cohorts usually would have had a knife in that
situation); Green v. State, 682 S.W.2d 271, 285B86 (Tex. Crim. App. 1984) (holding murder should have been anticipated
as a possible result of robbery when appellant admitted entering the house
armed with a gun), cert. denied, 470 U.S. 1034 (1985); Smith v. State,
187 S.W.3d 186, 190B92 (Tex.
App.CFort Worth 2006, pet. ref=d) (holding that there was sufficient evidence to support capital
murder conviction under law of parties when appellant participated in a robbery
but was not the shooter); Longoria v. State, 154 S.W.3d 747, 757 (Tex.
App.CHouston [14 Dist.] 2004, pet. ref=d) (holding appellant=s providing his cohort with gun for use in the robbery was sufficient
to support the jury=s conclusion
that victim=s death
should have been anticipated as a result of the robbery).

Here, appellant asserts that
none of the people involved in the robbery intended to kill anyone and that the
shooter=s conduct in firing the gun at Syed startled him.  However, the evidence shows that appellant
told Bivens that he needed money to buy drugs to sell and that he was going to
commit a robbery.  Appellant planned the
robbery by enlisting the help of his friends T.T. and Julian, and he got them Aall pumped up to go@ to Terry=s Market to
get some money.  Appellant also provided
them with a gun and attempted to locate another gun.  T.T. used the gun supplied by appellant to
shoot Syed when he got Atrigger
happy.@ 








Even assuming that appellant
did not intend for the gun to be fired during the robbery, he should have
anticipated that a murder was possible. 
The fact that appellant provided a firearm to his cohorts and tried to
find a second gun indicates that he was aware of the dangerousness of the
robbery.  Based on the evidence, the jury
could have reasonably concluded that appellant anticipated, or should have
anticipated, the possibility that T.T. could resort to shooting someone during
the course of the robbery.  See Love, 199
S.W.3d at 453.

Viewing all the evidence in
the light most favorable to the jury=s verdict, we conclude that a rational trier of fact could have found,
beyond a reasonable doubt, that appellant should have reasonably anticipated
the possibility of a murder occurring in the course of the robbery.  See Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; Clayton, 235 S.W.3d at 778. 
Furthermore, viewing the evidence neutrally, we conclude that the
evidence is not so obviously weak that the jury=s verdict seems Aclearly
wrong and manifestly unjust@ or that proof of guilt is against the great weight and preponderance
of the evidence.  See Watson, 204
S.W.3d at 414B15, 417; Johnson,
23 S.W.3d at 11.  Accordingly, we hold
that the evidence is legally and factually sufficient to support appellant=s conviction, and we overrule appellant=s points one and two.

IV. Law of Parties and the Indictment








In his third through sixth points, appellant argues that
the trial court erred by allowing the State to argue law of party liability to
the jury when it was not pled in the indictment.  Specifically, appellant claims the trial
court erred by denying his motion to quash, by allowing the State to discuss
the law of parties during voir dire, by denying his motion for judgment of
acquittal at the close of the State=s evidence, and by
including the law of parties in the jury charge.  Appellant alleges that the State=s failure to
indict him as a party to the offense violated his Sixth Amendment and due
process rights. 

It is well settled that the law of parties need not be pled
in the indictment.  Sorto v. State, 173
S.W.3d 469, 476 (Tex. Crim. App. 2005), cert. denied, 548 U.S. 926
(2006); Frank, 183 S.W.3d at 73. 
Additionally, the law of parties found in section 7.02(b) has often been
applied in capital murder cases.  See,
e.g., Montoya, 810 S.W.2d at 165; Wood v. State, 4 S.W.3d 85, 90
(Tex. App.CFort Worth 1999, pet. ref=d).

Here, the State was not required to plead the law of
parties in the indictment and was not precluded from discussing the theory
during voir dire.  See Sorto, 173
S.W.3d at 476; Frank, 183 S.W.3d at 73. 
Further, the trial court did not err by including the law of parties in
the jury charge.  See Sorto, 173
S.W.3d at 476; Frank, 183 S.W.3d at 73. 
Therefore, we overrule appellant=s third, fourth,
fifth, and sixth points.

V. Lesser Included Offenses

In appellant=s seventh point,
he argues that the trial court erred by denying his request to include the
lesser included offenses of conspiracy to commit capital murder and conspiracy
to commit aggravated robbery in the jury charge. 








A.      Jury Charge

The trial court is obligated
to charge the jury on the law applicable to the case, not expressing any
opinion as to the weight of the evidence. 
Tex. Code Crim. Proc. Ann.
art. 36.14 (Vernon 2007).  Before the
charge is read to the jury, the defendant is entitled to a reasonable time to
examine the charge and present any objections in writing.  Id.  In addition, both parties are entitled to a
reasonable time to present written instructions to be included in the
charge.  Id. art. 36.15 (Vernon
2006).  

B.     Lesser
Included Offense Instructions








We use a two-step analysis to
determine whether an appellant was entitled to a lesser included offense
instruction.  Hall v. State, 225
S.W.3d 524, 528 (Tex. Crim. App. 2007); Rousseau v. State, 855 S.W.2d
666, 672B73 (Tex. Crim. App.), cert. denied, 510 U.S. 919 (1993).  First, the lesser offense must come within
article 37.09 of the code of criminal procedure.  Tex.
Code Crim. Proc. Ann. art. 37.09 (Vernon 2006); Moore v. State,
969 S.W.2d 4, 8 (Tex. Crim. App. 1998).  AAn offense is a lesser included offense if . . . it is established by
proof of the same or less than all the facts required to establish the
commission of the offense charged.@  Tex. Code Crim. Proc. Ann. art. 37.09(1); see also Hall,
225 S.W.3d at 536.  This inquiry is a
question of law.  Hall, 225 S.W.3d
at 535.  It does not depend on the
evidence to be produced at the trial but is performed by comparing the elements
of the offense as they are alleged in the indictment or information with the
elements of the potential lesser included offense.  Id. at 525, 535B36.

Second, some evidence must
exist in the record that would permit a jury to rationally find that if the
appellant is guilty, he is guilty only of the lesser offense.  Hall, 225 S.W.3d at 536; Salinas v.
State, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); Rousseau, 855
S.W.2d at 672B73.  The evidence must be evaluated in the context
of the entire record.  Moore, 969
S.W.2d at 8.  There must be some evidence
from which a rational jury could acquit the appellant of the greater offense
while convicting him of the lesser included offense.  Id. 
The court may not consider whether the evidence is credible,
controverted, or in conflict with other evidence.  Id. 
Anything more than a scintilla of evidence may be sufficient to entitle
a defendant to a lesser charge.  Hall,
225 S.W.3d at 536.

C.     Conspiracy
to Commit Aggravated Robbery








Neither appellant nor the State requested an instruction on
the lesser included offense of conspiracy to commit aggravated robbery; thus,
the trial court did not err by failing to submit an instruction.  The trial court need not submit a lesser included instruction sua sponte if neither side
requests one.  See Delgado v. State,
235 S.W.3d 244, 249B50 (Tex.
Crim. App. 2007).  Moreover, the defense
may not claim error successfully on appeal due to the omission of a lesser
included offense if the defense did not request one.  Id. at 250. 

D.      Conspiracy to Commit
Capital Murder

Appellant did ask for an
instruction on conspiracy to commit capital murder, so we will review his point
with respect to that omitted instruction.

1.       Applicable
Law

A person commits criminal conspiracy if, with intent that a
felony be committed, (1) he agrees with one or more people that they or one or
more of them will engage in conduct that would constitute the offense and (2)
he or one or more of them performs an overt act in pursuance of the
agreement.  Tex. Penal Code Ann. ' 15.02(a) (Vernon
2003).

A person is criminally responsible for an offense committed
by the conduct of another if       

in the attempt to carry out a
conspiracy to commit one felony, another felony is committed by one of the
conspirators, all conspirators are guilty of the felony actually committed,
though having no intent to commit it, if the offense was committed in
furtherance of the unlawful purpose and was one that should have been
anticipated as a result of the carrying out of the conspiracy.

 

Id. at ' 7.02(b).

 








2.       Analysis

Appellant argues that he should have received an
instruction on the lesser included offense of conspiracy to commit capital
murder.  Appellant requested the
following jury instruction:

A
person commits criminal conspiracy if, with intent that a felony be committed,
he agrees with one or more persons that they, or one of them, engage in conduct
that would constitute the offense, and he, or one or more of them, performs an
overt act in pursuance of the agreement.

 

An
agreement constituting a conspiracy may be inferred from acts of the parties.

 

Now,
if you find from the evidence beyond a reasonable doubt that on or about April
13, 2005 in Tarrant County, Texas, the Defendant, Darrell Glenn Bell, did then
and there with intent that a felony, to wit: aggravated robbery, be committed,
agree with Tarrence L. Stevenson and Julian Hayley that said Defendant and
Tarrence L. Stevenson and Julian Hayley engage in conduct that would
[constitute] said offense of aggravated robbery, to wit while in the course of
committing theft of property, and with the intent to obtain and maintain
control of said property, T[a]rrance L. Stevenson intentionally caused bodily
injury, serious bodily injury or the death of Syed Karim by shooting him with a
firearm and that the Defendant did then and there, if he did, commit an act or
acts in furtherance of said conspiracy by driving an automobile, providing
assisting in the surveillance of the store prior to or during the robbery and
the persons therein, obtaining property from the store and sharing in and
distributing the proceeds from the conspiracy, if he did any of these said
acts, then you will find the Defendant guilty of the lesser included offense of
conspiracy to commit capital murder.

 








Unless
you so find beyond a reasonable doubt, or if you have a reasonable doubt
thereof, you will acquit the Defendant of the lesser included offense of
conspiracy to commit capital murder and next consider whether he is guilty, if
at all, of the lesser included offense of aggravated robbery. 

 

Appellant=s proposed
instruction states that the jury should find him guilty of the lesser included
offense of conspiracy to commit capital murder if it found that appellant and
his cohorts agreed that Stevenson would intentionally cause bodily injury or
serious bodily injury to Syed or Syed=s death during the
course of committing the aggravated robbery. 
The intent to commit murder is a required element of party liability for
capital murder under section 7.02(a); however, under section 7.02(b), under
which appellant was also charged, Aall conspirators
are guilty of the felony actually committed, though having no intent to
commit it.@ 
See Tex. Penal Code Ann. '' 19.03(a)(2),
7.02(b) (emphasis added).  Thus,
appellant=s proposed conspiracy to commit capital
murder charge, which requires proof that appellant intended for Stevenson to
kill Syed, is not a lesser included offense of capital murder under the State=s 7.02(b) theory
of this case, which specifically excluded the need for any intent. 








Moreover, here there is no evidence permitting a rational
jury to find that appellant and both his friends intended for Stevenson to kill
Syed as part of the conspiracy. 
Accordingly, there is no evidence that if appellant is guilty, he is
guilty only of conspiracy to commit capital murder.  See Hall, 225 S.W.3d at 536; Salinas, 163 S.W.3d at 741; Rousseau,
855 S.W.2d at 672B73.  Thus, we hold that the trial court did not
err by refusing to include an instruction on the lesser included offense of
conspiracy to commit capital murder, and we overrule appellant=s seventh point.

VI. Benefit of the Doubt

In his eighth point, appellant argues that the trial court
erred by denying appellant=s request for a Abenefit of the
doubt@ instruction
regarding lesser included offenses in the jury charge.

A.      Applicable Law








As a general rule, if
evidence in a case leaves a reasonable doubt as to the grade or degree of the
offense, upon a request by the defendant, the trial court must give the jury a Abenefit of the doubt@ instruction.  Benavides v.
State, 763 S.W.2d 587, 589 (Tex. App.CCorpus Christi
1988, pet. ref=d); Shelby
v. State, 724 S.W.2d 138, 139 (Tex. App.CDallas 1987) (op. on reh=g), vacated on other grounds, 761 S.W.2d 5 (Tex. Crim. App.
1988); see also Mathis v. State, No. 02-06-00355-CR, 2007 WL 2963718, at
*4 (Tex. App.CFort Worth
Oct. 11, 2007, pet. ref=d) (mem.
op., not designated for publication).  A Abenefit of the doubt@ instruction is required even when the charge includes a proper
instruction on reasonable doubt as applied to the whole case.  Shelby, 724 S.W.2d at 139.  This additional instruction clears up
confusion when the jury has no reasonable doubt that the defendant committed an
offense, but is uncertain concerning the grade or degree of that offense.  Benavides, 763 S.W.2d at 589.  A court=s refusal to include a Abenefit of the doubt@ instruction is not harmful to the defendant, however, if the charge
as a whole leaves no uncertainty as to how to resolve any doubt.  Id.; Shelby, 724 S.W.2d at 140.


B.     Analysis

In this case, appellant asked
for the following to be added to the jury charge:

If you should find from the evidence beyond a
reasonable doubt that the defendant, Darrell Glenn Bell, is either guilty of
capital murder, or aggravated robbery, but you have a reasonable doubt as to
which offense he is guilty, then you should resolve that doubt in the Defendant=s
favor, and in such event, you will find the Defendant guilty of the lesser
offense of aggravated robbery.

 

If you find from the evidence that the Defendant
is not guilty of capital murder, or aggravated robbery, or if you have a
reasonable doubt thereof, you will acquit the Defendant and say by your verdict
ANot
Guilty.@ 

 

The trial court denied appellant=s request.  However, the trial
court gave the jury the following instruction:








Now, if you find from the evidence beyond a
reasonable doubt that on or about the 13th day of April, 2005, in Tarrant
County, Texas, Tarrence L. Stevenson, did then and there intentionally cause
the death of an individual, Syed Karim, by shooting him with a firearm, and the
said Tarrence L. Stevenson was then and there in the course of committing of
attempting to commit the offense of Robbery of Syed Karim, and if you further
believe from the evidence beyond a reasonable doubt that on said date in said
County and State, the Defendant, Darrell Glenn Bell, as a party as that term in
hereinbefore defined with the intent that the Capital Murder be committed,
aided or attempted to aid the said Tarrence L. Stevenson in the foregoing
action, by providing an automobile, driving an automobile, providing a firearm,
assisting in the surveillance of the store prior to or during the Robbery and
the persons therein, obtaining property from the store and sharing in and
distributing the proceeds from the conspiracy, if he did; or if you believe
from the evidence beyond a reasonable doubt that the Defendant, Darrell Glenn
Bell, entered into a conspiracy with Tarrence L. Stevenson and Julian L. Hayley
to commit the felony offense of Robbery and that on the 13th day of April,
2005, in the County of Tarrant and State of Texas, in the attempt to carry out
this agreement, if any, Tarrence L. Stevenson did then and there intentionally
shoot and kill Syed Karim, if he did, and that such offense was committed in
furtherance of the unlawful purpose to commit Robbery and was an offense that
should have been anticipated as a result of the carrying out of the agreement,
then you will find the Defendant, Darrell Glenn Bell, guilty of Capital Murder,
though he may have had no intent to commit it, and so say by your verdict, but
if you do not so believe, or if you have a reasonable doubt thereof, you will
acquit the Defendant of Capital Murder and next consider whether or not the
Defendant is guilty of the lesser included offense of Aggravated Robbery.

 








Now, therefore, if you find from the evidence
beyond a reasonable doubt that Tarrence L. Stevenson on or about the 13th day
of April , 2005, in Tarrant County, Texas did then and there intentionally or
knowingly cause bodily injury to Syed Karim by shooting him with a deadly
weapon, to wit: a firearm, while then and there in the course of committing or
attempting to commit the offense of Aggravated Robbery of Syed Karim, and that
the Defendant, Darrell Glenn Bell, acting with the intent that the Aggravated
Robbery be committed, aided or attempted to aid the said Tarrence L. Stevenson in
the foregoing action by providing an automobile, driving an automobile,
providing a firearm, assisting in the surveillance of the store prior to or
during the Robbery and the persons therein, obtaining property from the store
and sharing in and distributing the proceeds from the conspiracy, if he did;
then you will find the Defendant guilty of the lesser included offense of
Aggravated Robbery.

 

Unless you so find beyond a reasonable doubt, or
if you have a reasonable doubt thereof, you will acquit the Defendant of the
lesser included offense of Aggravated Robbery and say by your verdict Anot
guilty.@ 

 

Accordingly, the application
paragraphs of the court=s charge
first asked the jury to consider whether it found beyond a reasonable doubt
that appellant was guilty of the offense of capital murder.  See Benavides, 763 S.W.2d at 589; see
also Mathis, 2007 WL 2963718, at *5. 
Next, the application paragraph instructed the jury that if it did not
so find, it should acquit appellant of capital murder and then consider whether
he was guilty of aggravated robbery.  See
Benavides, 763 S.W.2d at 589; see also Mathis, 2007 WL 2963718, at *5.  It further instructed that if the jury did
not find appellant guilty of aggravated robbery beyond a reasonable doubt, it
should acquit appellant of that offense as well.  See Benavides, 763 S.W.2d at 589;
see also Mathis, 2007 WL 2963718, at *5. 









The charge in this case
clearly instructed the jury that it should acquit appellant of the greater
offense, i.e., capital murder, if it was not convinced beyond a reasonable
doubt of his guilt.  See Benavides, 763
S.W.2d at 589; see also Mathis, 2007 WL 2963718, at *5.  Furthermore, it also instructed the jury
that if it had a reasonable doubt about appellant=s guilt concerning the lesser included offense, aggravated robbery, it
should acquit appellant of the lesser included offense as well.  See Benavides, 763 S.W.2d at 589;
see also Mathis, 2007 WL 2963718, at *5. 
Thus, no additional Abenefit of the doubt@ instruction was necessary.  See
Benavides, 763 S.W.2d at 589; Shelby, 724 S.W.2d at 140; see also
Mathis, 2007 WL 2963718, at *5.  We
hold that the trial court did not err by refusing the instruction, and we
overrule appellant=s eighth
point.

VII. Accomplice Witness
Testimony 

In his ninth point, appellant
argues that the trial court erred by denying his request that it instruct the
jury that Amanda Bivens was an accomplice witness.  Specifically, appellant argues that Bivens
was an accomplice because she knew that appellant and his friends were going to
rob someone, she provided the car they drove, she passed the gun to the person
who shot Syed, and she received proceeds from the robbery. 

A.     Applicable
Law








The accomplice witness rule
mandates that A[a]
conviction cannot be had upon the testimony of an accomplice unless
corroborated by other evidence tending to connect the defendant with the
offense committed.@  Tex.
Code Crim. Proc. Ann. art. 38.14 (Vernon 2005); Druery v. State, 225
S.W.3d 491, 498 (Tex. Crim. App. 2007), cert. denied, 128 S. Ct. 627
(2007); Barnes v. State, 56 S.W.3d 221, 229 (Tex. App.CFort Worth 2001, pet. ref=d).  An accomplice witness is
one who participates with a defendant before, during, or after commission of
the offense, including engaging in actions that show an understanding and common
design to do a certain act.  Druery,
225 S.W.3d at 498; Barnes, 56 S.W.3d at 229.  To be considered an accomplice witness, the
witness=s participation with the defendant must have involved some affirmative
act that promotes the commission of the offense with which the defendant is
charged.  Druery, 225 S.W.3d at
498; Barnes, 56 S.W.3d at 229B30.  A witness is not deemed an
accomplice because she knew of the crime but failed to disclose or conceal
it.  Druery, 225 S.W.3d at
498.  In addition, the witness=s mere presence at
the scene of the crime does not render that witness an accomplice witness.  Id.; Barnes, 56 S.W.3d at
230.  And complicity with an accused in
the commission of another offense apart from the charged offense does not make
that witness=s testimony that of an accomplice
witness.  Druery, 225 S.W.3d at
498.  In short, if the witness cannot be
prosecuted for the offense with which the defendant is charged, or a lesser
included offense of that charge, the witness is not an accomplice witness as a
matter of law.  Id.








The defendant is entitled to an accomplice witness
instruction only if there is sufficient evidence in the record of the witness=s participation in
the crime to support a charge against the witness for the offense with which
the accused is charged or a lesser included offense.  Barnes, 56 S.W.3d at 230.  A witness may be an accomplice either as a
matter of law or as a matter of fact; the evidence in a case determines what
jury instruction, if any, needs to be given. 
Cocke v. State, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006), cert.
denied, 127 S. Ct. 1832 (2007).  

Unless the evidence clearly shows that the witness is an
accomplice as a matter of law, i.e., the witness has been, or could have been,
indicted for the same offense, a question about whether a particular witness is
an accomplice is properly left to the jury with an instruction defining the
term Aaccomplice.@  Druery, 225 S.W.3d at 498B99; Cocke, 201
S.W.3d at 748B49. 
If a witness is an accomplice as a matter of law, the trial court is
required to provide an accomplice witness instruction to the jury.  Cocke, 201 S.W.3d at 749.  A trial judge, therefore, has no duty to
instruct the jury that a witness is an accomplice witness as a matter of law
unless there exists no doubt that the witness is an accomplice.  Druery, 225 S.W.3d at 498. 








If, however, the parties present conflicting or unclear
evidence as to whether a witness is an accomplice, the jury must first
determine whether the witness is an accomplice as a matter of fact.  Cocke, 201 S.W.3d at 748. Further, the
trial court is not required to give the jury an accomplice witness instruction
when the  evidence is clear that the
witness is neither an accomplice as a matter of law nor as a matter of fact.  Id.

The purpose of the instruction, therefore, is not to cast
suspicion on the testimony provided by the accomplice or to encourage jurors to
give it less weight than other testimony. 
Id. at 747.  Rather, the
instruction merely reminds the jury that it cannot use the accomplice=s testimony to
convict the defendant unless there also exists some nonaccomplice testimony
tying the defendant to the offense.  Id.  

B.     Analysis


Appellant requested an
instruction that Bivens was an accomplice as a matter of law and as a matter of
fact.  The trial court included only an
accomplice as a matter of fact instruction in the jury charge. 








Here, the evidence showed
that Bivens and appellant were in Bivens=s car when appellant told her that he needed money to purchase drugs
to sell and that he was going to Arun up in a store.@  Appellant drove to a house to
find his friends, and Bivens waited in the car while appellant went
inside.  When appellant returned, he
threw a gun in her lap and told her to hold it, but appellant testified that
she was not comfortable with guns because her father committed suicide, so she
passed it to one of appellant=s friends sitting in the back seat. 
Appellant did not produce any evidence that Bivens assisted in finding
or producing a gun.

Appellant argues that there
is evidence that Bivens drove the getaway car; however,  Bivens testified that appellant dropped her
off at a friend=s house and
that she was not present at Terry=s Food Mart when the robbery took place.[2]  Additionally, the State believed appellant=s girlfriend drove the getaway car and not Bivens.  In fact, Detective Jose Hernandez testified
that there was no credible evidence that Bivens took part in the crime. 








Based on these facts, we
conclude that Bivens was not an accomplice as a matter of law because there is
no evidence that she took any affirmative action to assist or promote the
commission of the offense of capital murder. 
See Barnes, 56 S.W.3d at 230. 
She did not help appellant or his accomplices plan the offense, she did
not aid them by obtaining weapons or disguises, she was not present during the
commission of the offense, and she did not participate in the commission of the
offense.  See id.  Even though Bivens allowed appellant to use
her car in exchange for ten or twenty dollars and she knew that appellant was
about to commit a crime, she did not have any details of the crime, nor did she
accompany appellant and his friends.  At
most, the evidence shows that Bivens knew appellant wanted to rob someone, that
she allowed him to use her car, which she had previously agreed to in the past
in exchange for drugs, that she received a small amount of cash after the
robbery, and that she concealed her knowledge by not immediately reporting the
crime to law enforcement officials.  See
Druery, 225 S.W.3d at 498.  Under
these facts, it is not clear that Bivens could have been prosecuted for capital
murder or one of the lesser included offenses. 
See Cocke, 201 S.W.3d at 749; Barnes, 56 S.W.3d at
230.  Thus, the trial court properly
refused appellant=s requested
accomplice witness instructions as a matter of law, and we overrule appellant=s ninth point.

VIII. Independent Impulse

In his tenth point, appellant
contends that the trial court erred by denying his request for an Aindependent impulse@ instruction in the jury charge. 

A.     Applicable
Law








The Texas Court of Criminal
Appeals has held that defendants are not entitled to instructions on defensive
theories not enumerated in the Texas Penal Code, including a defensive charge
on independent impulse.  Walters v.
State, 247 S.W.3d 204, 210 (Tex. Crim. App. 2007); Solomon v. State, 49
S.W.3d 356, 368 (Tex. Crim. App. 2001); Schiffert v. State, 257 S.W.3d
6, 21 (Tex. App.CFort Worth
2008, pet. dism=d), untimely
filed; Severs v. State, 87 S.W.3d 752, 756 (Tex. App.CTexarkana 2002, no pet.).  An
instruction on independent impulse is merely a negation of elements in the
State=s case; therefore its inclusion would be superfluous and, in fact,
would be an impermissible comment on the weight of the evidence.  See Solomon, 49 S.W.3d at 368; Severs,
87 S.W.3d at 756.

B.     Analysis

Here, the trial court gave
instructions tracking the statutory language of 
penal code 7.02(b).[3]  Appellant argues that these instructions were
not enough to cover the independent impulse issue and contends that the trial
court should have submitted the following instruction:

If you find from the evidence that the defendant,
Darrell Glenn Bell, left the scene of the offense, if any, prior to the
shooting, if any, or if you have a reasonable doubt thereof, then you will
acquit the defendant of capital murder and next consider whether he is guilty
of the offense of aggravated robbery. 

 








Appellant=s proposed defensive issue would simply negate the conspiracy
liability element of the State=s case and is inconsistent with current Texas law; all that is
required is for the appropriate portions of the jury charge to track the
language of section 7.02(b).  See
Solomon, 49 S.W.3d at 368.  Because
the jury charge tracked the language of section 7.02(b) and because the defense
of independent impulse is not found in the penal code, we hold that the trial
court did not err by refusing to include the instruction and overrule appellant=s tenth point.

IX.
Prosecutor=s
Allegedly Improper Comments 

on
Appellant=s
Failure to Testify

 

In his eleventh point,
appellant argues that the trial court erred by overruling his objections to the
prosecutor=s comments
regarding his silence. 

A.     Applicable
Law    

To be permissible, the State=s jury argument must fall within one of the following four general
areas:  (1) summation of the evidence;
(2) reasonable deduction from the evidence; (3) answer to argument of opposing
counsel; or (4) plea for law enforcement.  Felder v. State, 848 S.W.2d 85, 94B95 (Tex. Crim. App. 1992), cert. denied, 510 U.S. 829 (1993); Alejandro
v. State, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).








It is well-settled law that
the State is entitled to comment on an accused=s failure to produce testimony from sources other than himself when it
is relevant to a disputed issue.  Patrick
v. State, 906 S.W.2d 481, 490 (Tex. Crim. App. 1995), cert. denied, 517
U.S. 1106 (1996); Harris v. State, 122 S.W.3d 871, 884 (Tex. App.CFort Worth 2003, pets. ref=d).  Moreover, a prosecutor=s comment about the subpoena power of a defendant is proper if it
refers to the defendant=s failure to
produce evidence from other sources.  Livingston
v. State, 739 S.W.2d 311, 338 (Tex. Crim. App. 1987), cert. denied, 487
U.S. 1210 (1988); Harris, 122 S.W.3d at 884.  Accordingly, a prosecutor=s comment is improper only if it points to the absence of evidence
that could be supplied only by the defendant=s testimony.  Fuentas v.
State, 991 S.W.2d 267, 275 (Tex. Crim. App.), cert. denied, 528 U.S.
1026 (1999); Harris, 122 S.W.3d at 884. 

B.      Analysis

During closing arguments in the guilt/innocence phase of
the trial, the following exchange took place:

[State]:         These
are the individuals that he decided he needed to go forth.  Follow the money from everybody here, and,
see, both sides, when they put on cases from both sides, and we talked about it
in voir dire, they have an opportunity just to sit here.  But once they open their mouth, they have the
equal right to subpoena anybody they want. 
Did you ever hear anybody about his gainful employment?

 

[Defense]:    Your
Honor, I=m going to object.  That=s a comment upon my client=s failure to testify.

 

The Court:    That=s overruled.

 

[State]:         Nobody
came in to refute what=s there.

 








[Defense]:    Your
Honor, I am going to refute again to failure -to-testify comments.  And that=s a direct B

 

The Court:    That=s overruled. 

 

[State]:         We=re here today because Mr. Bell
needed cash.  We=re here today because Mr. Bell
decided to go to Terry=s Food Mart and go in and kill
Syed.  That=s part of the game when you bring a
gun to the party.

 

 . . . Mo [appellant] made the decision that he
needed money that week.  And this is the
way to get it.  Not go get a job and not
work hard like everybody else in the community does. 

 








Here, the prosecutor argued
that appellant did not present any evidence to refute the State=s theory that he decided to commit robbery because he needed
money.  After reviewing the prosecutor=s comments in context, we conclude that the argument at issue refers
to appellant=s failure to
call other witnesses or produce testimony from sources other than himself.  See Patrick, 906 S.W.2d at 490;
Livingston, 739 S.W.2d at 338; Harris, 122 S.W.3d at 884; see
also Wolfe v. State, 917 S.W.2d 270, 279 (Tex. Crim. App. 1996) (holding
that a prosecutor cannot comment on the lack of evidence presented when that
comment necessarily refers to the defendant=s failure to testify, but language that can reasonably be construed as
a failure to present evidence other than the defendant=s testimony is not a comment on the failure to testify).  Thus, the trial court=s overruling of appellant=s objection was not an abuse of discretion because the comment was not
improper.  See Patrick, 906 S.W.2d
at 490; Livingston, 739 S.W.2d at 338; Harris, 122 S.W.3d at
884.  We overrule appellant=s eleventh point.

X. Evidentiary Challenge

In his twelfth point,
appellant asserts that the trial court abused its discretion in admitting State=s Exhibit 44, a witness statement made by Shawntee Abbs, because the
statement exceeded the matters inquired into, produced before the jury
prejudicial hearsay, and contained extraneous offenses or acts of misconduct
which were substantially more prejudicial than probative.  The State responds that the statement was
properly admitted under the rule of optional completeness because defense
counsel opened the door during cross- examination. 

A.     Standard
of Review and Applicable Law

We review a trial court=s decision to admit evidence under an abuse of discretion
standard.  Walters, 247 S.W.3d at
217; West v. State, 121 S.W.3d 95, 100 (Tex. App.CFort Worth 2003, pet. ref=d).  The trial court abuses its
discretion only when the decision lies Aoutside the zone of reasonable disagreement.@  Walters, 247 S.W.3d at
217; West, 121 S.W.3d at 100.  








Hearsay statements are
generally not admissible unless the statement falls within a recognized
exception to the hearsay rule.  Walters,
247 S.W.3d at 217.  Rule 107, the
rule of optional completeness, is one of these exceptions.  Id. 
Rule 107 provides that

[w]hen part of an act, declaration, conversation,
writing or recorded statement is given in evidence by one party, the whole on
the same subject may be inquired into by the other, and any other act,
declaration, writing or recorded statement which is necessary to make it fully
understood or to explain the same may also be given in evidence, as when a
letter is read, all letters on the same subject between the same parties may be
given.

 

Tex. R. Evid. 107.  








This rule is one of
admissibility and permits the introduction of otherwise inadmissible evidence
when that evidence is necessary to fully and fairly explain a matter Aopened up@ by the
adverse party.  Walters, 247
S.W.3d at 218; West, 121 S.W.3d at 103. 
It is designed to reduce the possibility of the jury receiving a false
impression from hearing only a part of some act, conversation, or writing, and
it takes effect when other evidence has already been introduced but is
incomplete or misleading.  Walters, 247
S.W.3d at 218; West, 121 S.W.3d at 103. 
Once an evidentiary door has been opened by one side, this rule serves
to allow the other side to complete the picture.  West, 121 S.W.3d at 103.  Rule 107 does not permit the introduction of
other similar but inadmissible evidence unless it is necessary to explain
properly admitted evidence.  Walters, 247
S.W.3d at 218.  Further, the rule is not
invoked by the mere reference to a document, statement, or act.  Id. 
And it is limited by Rule 403, which permits a trial judge to exclude
otherwise relevant evidence if its unfair prejudicial effect or its likelihood
of confusion of the issues substantially outweighs its probative value.  Id.

B.     Analysis

We first observe that
appellant did not object that the complained of evidence was substantially more
prejudicial than probative; he objected only that the evidence was not
admissible under the rule of optional completeness.  Consequently, he failed to preserve his rule
403 complaint for appellate review.  See
Tex. R. App. P. 33.1(a)(1)
(requiring that to preserve a complaint for appellate review, a party must have
presented to the trial court a timely request, objection, or motion that states
the specific grounds for the desired ruling if they are not apparent from the
context of the request, objection, or motion); Mosley v. State, 983
S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999).  

Abbs was allowed to use the
statement she made to police to refresh her memory during the State=s examination.  See Tex. R. Evid. 612.  During cross- examination, defense counsel
also questioned Abbs regarding her previous statement.  Defense counsel specifically asked Abbs about
the handwritten portion of her statement, which read:








Boo n
T-T were talking about how the[y] rob[b]ed the store and got the money.

 

T-T
told me that he had shot at somebody or shot somebody when he said I bus[t]ed at
that nigga. 

 

However, defense counsel further asked Abbs as
follows:

[Defense]:   And do you know who shot the clerk.  You know, don=t
you?

 

[Abbs]:      Do I know what?

 

[Defense]:   You know who shot the clerk, don=t
you?

 

[Abbs]:      Um.

 

[Defense]:   Come on.

 

[Abbs]:      I heard B I
heard different, you know . . . I done heard different stories.

 

[Defense]:   Uh-huh.

 

[Abbs]:      Yeah, but I done heard who shot him or
whatever.

 

[Defense]:   . . . [I]n your own handwriting didn=t you
say T.T. said, Do you remember when I busted that nigger, and that=s
when he told you he had shot somebody, T.T.?

 

[Abbs]:      Yes.

 

[Defense]:   Yeah. 
So is it a fair statement to say that T.T. said B and
you don=t
know his real name, you know him as T.T. B let me get it right.  I don=t want to misquote you
here.  Right?

 

[Abbs]:      Yeah. 

 








[Defense]:   Yeah. 
And that=s
your own handwriting, isn=t it?

 

[Abbs]:      Yes, sir. 

 

Defense counsel then showed
Abbs pictures of appellant, T.T., and Julian. 
When Abbs identified T.T., defense counsel stated,

This is T.T. that=s the, I busted that nigger, I shot the clerk guy, right? 

Abbs responded, AUh-huh.@  Defense counsel also wrote AI busted that nigger, I shot the clerk@ on a large piece of paper and displayed it for the jury.  Later, on redirect examination, the State
said:

[State]:      Ms. Abbs, let=s be
accurate about this.  See this statement
that Mr. Jones put here in quotes, I busted that the [sic] nigger, I shot the
clerk.  Is that what you wrote on your
statement?  Are those the words that are
written on your statement?

 

[Abbs]:      No, its not like that.

 

[State]:      Okay. 
Because that B
because that=s not
what you said, is it?

 

[Abbs]:      No, its not in here. 

 

The State then offered Abbs=s entire written statement into evidence under the rule of optional
completeness, and the trial court admitted it but only for the limited purpose
of assessing Abbs=s
credibility. 








Appellant argues that it was
improper to admit Abbs=s statement
because  the document was used only to
refresh Abbs=s
memory.  However, because defense counsel
misquoted the handwritten portion of Abbs=s statement and actually created a visual of the misquoted statement
for the jury to view, the rule of optional completeness was properly
invoked.  See Tex. R. Evid. 107; Walters, 247
S.W.3d at 217B18; West,
121 S.W.3d at 103.  The rest of Abbs=s statement was properly offered into evidence under the rule of
optional completeness to show that the words written by defense counsel were
not included anywhere in the statement and that her statements were taken out
of context.  Thus, we hold that the trial
court did not abuse its discretion by permitting the admission of Abbs=s written statement because the decision was not outside the zone of
reasonable disagreement.  See Walters,
247 S.W.3d at 217; West, 121 S.W.3d at 100.  We overrule appellant=s twelfth point.

XI. Conclusion

Having overruled appellant=s twelve points, we affirm the trial court=s judgment.

 

                                                                TERRIE
LIVINGSTON

JUSTICE

 

PANEL:  LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
August 29, 2008











[1]See Tex. R. App. P. 47.4.





[2]Appellant
made the allegation that Bivens drove the getaway car before  Bivens testified, but he never provided any
evidence to support that assertion. 





[3]See
Section VI for the jury charge.